## Scully et al. v. Massey et al.

*George G. Chandler,* for plaintiffs; *Wilfred R. Lorry,* for defendants.

GORDON, Jr., J., December 5, 1932.—This is a rule to show cause why an attachment for contempt should not issue against the respondents, Raymond Gleadall and Nora M. T. Gleadall, the present owners, and Michael King, the lessee of premises No. 207 South Forty-third Street, in the City of Philadelphia, for conducting thereon an open-air parking place, in alleged violation of a final injunction issued by us on January 29, 1928, against Isaac W. Massey and Valentine Kulp, the then owners of the property. From the respondents' answers to the rule and the depositions taken thereunder, it appears that the original owners sold the property to Mr. and Mrs. Gleadall, who, in March, 1932, rented it to the respondent King, and that the latter is now using it as a public open-air parking place.

The question raised by the rule is whether this use of the premises is a violation of the final decree issued by us, in which we restrained the then defendant owners "from using or operating or permitting to be used or operated as a public garage or automobile sales and service station the tract of land" in question, "or any structure or building now or hereafter erected on the said lot." When the bill was filed, the defendants were about to erect and operate a public garage on the premises, and we restrained them from doing so in the language just quoted. The land was, and still is, a vacant lot, with a parking capacity of from a hundred to a hundred and fifty cars.

Of course, the respondents, as successors in title of the original defendants, are subject to the restraints of the injunction issued against the latter. They contend, however, that an open-air parking place differs so radically from a garage, both in the nature and in the number and details of their respective activities, that the former is not in the category of nuisances per se within which the public garage falls in connection with strictly residential districts, and, hence, that the open-air parking place is not embraced within the prohibition of the injunction issued by us. With this contention we cannot agree. There is no fundamental difference between the public garage and the public parking place in their capacities to become nuisances in residential districts. Each is a kind of garage; and the activities of each tend to give rise to the same kind of inevitable annoyances and injuries to neighboring properties. Whatever nuisance features of a garage would be avoided or lessened in degree in the case of an open-air parking place by the absence of a garage building, they would be offset in other ways. While the absence of a building doubtless would eliminate some of the nuisance-producing activities of a garage, such as the noises of shop work, filling and greasing of cars, etc., it would also serve to accentuate other objectionable features, such as the noises caused by the warming up of motors and the shifting of cars, which the muffling effect of a garage building would

tend to minimize. The open-air parking place also has nuisance features of its own from which a garage building is largely free, and which result from the presence and constant movement in the open of large numbers of cars and people. The basic consideration which makes a public business of this character a nuisance per se in a residential neighborhood is the abnormal concentration in so unsuitable a place of large numbers of cars and people alien to the locality, with its inevitable accompanying dangers, noises and congestions of traffic. In each of these kinds of garages this basic consideration is present; and so long as the doctrine of nuisance per se, which bans the objectionable business, whether or not it is a nuisance in fact in the particular instance, remains the law of the land, we see no reason, either from logical or practical considerations, for drawing a distinction between the open-air and the enclosed garage. This being so, the open-air parking place which is being conducted by the respondent King on the premises in question is clearly within both the language and intent of the decree entered by us, and there can be no legal objection to the issuance of the attachment prayed for. In view of the facts, however, that we are satisfied that the respondent has been operating the parking place in good faith, and without any deliberate intention to defy our decree, and has voluntarily come in to submit himself to our jurisdiction, we will not issue the attachment immediately; and accordingly enter the following order in the case:

And now, to wit, December 5, 1932, if within seven days the respondents shall discontinue using or operating or permitting to be used or operated as an open-air parking place the tract of land known as No. 207 South Forty-third Street, in the City of Philadelphia, as to which the final decree was heretofore issued in this case, rule discharged; otherwise rule absolute.